IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-01491-PSF-PAC

RONALD JENNINGS FOGLE,

      Applicant,

v.

WARDEN AL ESTEP, and
JOHN SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Patricia A. Coan, United States Magistrate Judge

      This is a *pro se* habeas corpus proceeding filed by Applicant Ronald Jennings Fogle under 28 U.S.C. §2254.[1]   The Application was referred to the undersigned on September 30, 2005 to issue a recommendation on disposition.  Respondents filed an Answer on November 18, 2005 and Applicant filed his Traverse on December 27, 2005. The state court record was filed in this court on April 28, 2006.  The Application is ripe for disposition.

I.

      On August 24, 2000, Applicant pleaded guilty to two counts of aggravated robbery in Jefferson County District Court Case Nos. 99CR626 and 99CR1286.   The District Attorney dismissed five counts of aggravated robbery, six counts of crime of violence, and five habitual criminal counts in exchange for Applicant's guilty pleas.   The trial court

---

[1]Mr. Fogle filed his initial §2254 Application on August 5, 2005, and an amended Application on August 25, 2005.

sentenced Applicant to concurrent terms of thirty-two years in the Colorado Department of Corrections ("CDOC") on October 23, 2000, to run concurrently with a sixty-six year sentence Applicant had received for crimes committed in Denver County.

Applicant asserts the following claims in his amended §2254 Application, filed on August 25, 2005: (1) that his sentence was enhanced beyond the statutory presumptive range based on a fact that was not found by the jury beyond a reasonable doubt, in violation of his Fourteenth Amendment due process rights as set forth in *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (2) that plea counsel was constitutionally ineffective, in violation of the Sixth Amendment, when counsel: admitted at the sentencing hearing that Applicant was on probation imposed by the State of Maryland at the time the crimes were committed; coerced Applicant into pleading guilty; and failed to conduct an adequate pretrial investigation; (3) that the state courts denied Applicant an evidentiary hearing on his state post conviction motions; (4) that the Colorado Court of Appeals ("CCA") denied Applicant a limited remand and then ruled that his claims were not properly before the court; and (5) that the CCA's denial of Applicant's *Apprendi* claim on a ground not raised by the government in the second state post conviction proceeding unfairly prejudiced Applicant because he was *pro se*.

I.

Respondents argue that the Application should be dismissed as untimely because it was filed outside the one year limitation period established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"),  Pub. L. 104-132, 110 Stat. 1218 (effective April 24, 1996).

A state prisoner is required to file his federal habeas petition within one year after his judgment of conviction becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A). The one year period is tolled during the time a properly filed state post conviction motion is pending. 28 U.S.C. §2244(d)(2). A state post conviction motion is "properly filed" when "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *see*, *also*, *Habtelassie v. Novak*, 209 F.3d 1208, 1210-11 (10th Cir. 2000). The tolling period includes "the period in which the petitioner could have sought an appeal under state law." *Gibson v. Klinger*, 232 F.3d 799, 804 (10th Cir. 2002); *see, also, Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999)(holding that AEDPA one-year limitations period was tolled from the time the petitioner filed his state post conviction motion until the state supreme court denied certiorari review).

The AEDPA limitation period is a statutory prerequisite to suit, but is not jurisdictional. *See Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998).

Applicant was sentenced on October 23, 2000. He did not file a direct appeal of his conviction. Thus, the one-year period began to run against Applicant on December 7, 2000, forty-five days after Applicant could have filed a direct appeal of his conviction under Colorado law. C.A.R. (Colorado Appellate Rule) 4(b)(1). The limitations period ran for 154 days until Applicant filed his first state post conviction motion under Colo.R.Crim.P.

3

35(b) on May 11, 2001 (R.[2]Vol. I, at 155).[3]  *See Robinson v. Golder*, __ F.3d __, 2006 WL

806301 at *2 (10th Cir. (Colo.) 2006)(holding that Rule 35(b) motion for reduction of

sentence tolls the statute of limitations period in 28 U.S.C. §2244(d)(1)).  Applicant filed

additional post conviction motions under Colo.R.Crim.P. 35 on May 24, 2001.  (R.Vol. II,

at 157-71)  The statute was tolled until July 27, 2002, forty-four days after the CCA issued

its decision in  *People v. Fogle*, CCA No. 01CA1241 (decided June 13, 2002)("*Fogle* I")

(Respondents' Ex. C), when Applicant failed to properly file a petition for certiorari review

with the Colorado Supreme Court.[4]  *See* C.A.R. 52(b)(3)(stating that "[a]ny petition for writ

of certiorari to review a judgment of the Court of Appeals shall be filed in the Supreme

Court within thirty days after the expiration of the time for filing a petition for rehearing in

the Court of Appeals, if no petition for rehearing is filed"); C.A.R. 40(a)(stating that a

petition for rehearing may be filed within fourteen days after entry of judgment, unless the

time is lengthened or shortened by court order)

Another 225 days elapsed on the AEDPA time clock before the statute was tolled

again when Applicant filed a second state post conviction motion on March 10, 2003.  (R.

Vol. II, at 221) According to Respondents, that motion was pending until August 5, 2005,

---

[2]All references to "R." are to the state court record.

[3]Applicant's allegations that he filed state post conviction motions on January 7, 2001 and on March 19, 2001(*see* Traverse, at 7; Application at 4A), are refuted by the state court record. The record shows that the first document Applicant filed in the state trial court in 2001 was a March 31, 2001 motion for extension of time to file post conviction motions.  (R. Vol. I, at 149) A motion for extension of time does not toll the limitations period.

[4]Applicant states in his Traverse that he filed a *pro se* petition for certiorari review with the Colorado Supreme Court, but he failed to comply with the court's rule regarding the filing of appropriate copies.  *See* C.A.R.53(f).  Accordingly, the improperly filed petition did not toll the statute. *Artuz*, 531 U.S. at 8.

4

the date on which the CCA issued its mandate, following the Colorado Supreme Court's

denial of certiorari review on July 25, 2005.  (*See* Answer, at 9; Respondents' Exs. K, L)

Applicant filed a Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C.

§1915 [IFP] in a Habeas Corpus Action on August 1, 2005 and tendered his §2254

Application to the court for filing on that same date.[5]   The §2254 Application is deemed

filed on the date Applicant filed his IFP Motion.  *See Jarrett v. U.S. Sprint Communications*

*Co.*, 22 F.3d 256, 259 (10th Cir. 1994) (complaint is deemed "`filed' upon presentation to

the court clerk when accompanied by an IFP motion, so that the formal filing 'relates back'-

-upon grant of pauper status--to the 'lodging' of the complaint with the clerk").  I thus

recommend finding that the Application was filed on August 1, 2005 for purposes of

applying the AEDPA one-year limitations period.  Applicant has not shown that he is

entitled to the benefit of an earlier filing date under the prisoner mailbox rule of *Houston*

*v. Lack*, 487 U.S. 266 (1988).[6]

---

[5]The "Docket Text" shows that Applicant filed a Motion to Proceed under 28 U.S.C. §1915 on August 1, 2005; however, the document under that entry is not the Applicant's IFP Motion, but is instead the court's August 5, 2005 Order Directing Clerk to Commence a Civil Action . . . [Doc. #1].   Because there was a docketing error and the court does not have a paper copy of the motion Applicant filed on August 1, 2005, I will assume, based on the "docket text" entry for August 1, 2005 that Applicant did file an IFP Motion on that date.

[6]In *Houston v. Lack*, the Supreme Court held that a *pro se* prisoner's notice of appeal is considered timely filed if given to prison officials for mailing prior to the filing deadline, and not the date when the court receives the document.  487 U.S. at 276. The rule has been extended to a state prisoner's filing of a §2254 application.  *See Marsh v. Soares*, 223 F.3d 1217, 1218 and n.1 (10th Cir. 2000).

In *Price v. Philpot*, 420 F.3d 1158, 1166 (10th Cir. 2005), the Tenth Circuit held that an inmate must establish timely filing under the mailbox rule by either (1) alleging and proving that he or she made timely use of the prison's legal mail system if a satisfactory system is available; or (2) by timely use of the prison's regular mail system in combination with a notarized statement or declaration under penalty of perjury of the date on which the documents were given to prison authorities and attending that postage was prepaid.  Here, Applicant relies solely on his unsworn allegations that he gave his Application to prison officials on July 28, 2005 for mailing.  Traverse, at 4.  Although Applicant signed the §2254 Application on July 28, 2005, *see* August 5, 2005 Application at p. 9, he does not aver that he gave it to

Even assuming that Applicant's second state post conviction motion is deemed filed in the state trial court on March 1, 2003, the date Applicant states that he gave the motion to prison authorities for mailing (R. Vol. II, at 228),[7] and was pending until August 5, 2005,

---

prison authorities for mailing on that date. Applicant is therefore not entitled to the benefit of the prisoner mailbox rule. Moreover, even if the court deemed the §2254 Application filed on July 28, 2005, it would still be untimely.

[7]I note that my research has not revealed any Colorado appellate court decisions holding that the prisoner mailbox rule of *Houston v. Lack* applies to the filing of state post conviction motions. However, even if Applicant were entitled to the benefit of that rule for his March 2003 state post conviction motion based on his unsworn statement, it does not help him. Moreover, the state court record shows that plaintiff's plea counsel hand-filed the Rule 35(b) motion on May 11, 2001, so that the prisoner mailbox rule is inapplicable to that motion. (R. Vol. I, at 155)

when the CCA issued its mandate,[8] the §2254 Application was filed five days after the one-year limitations period expired.

Because "§ 2244(d) is not jurisdictional," its one-year limitation period "may be subject to equitable tolling." *Miller*, 141 F.3d at 978. Equitable tolling "is only available when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Applicant does not argue, and the record does not

---

[8]The AEDPA time clock is tolled "all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." *Barnett*, 167 F.3d at 1323. The issue is whether under Colorado law, the statute is tolled only until the Colorado Supreme Court denies certiorari review, or whether tolling extends to the CCA's issuance of a mandate at a later date.

In *Serrano v. Williams*, 383 F.3d 1181, 1184-85 (10th Cir. 2004), the Tenth Circuit rejected the petitioner's argument that the Mexico Supreme Court's decision denying his petition for certiorari review was not final until a mandate issued because the New Mexico Supreme court did not customarily issue a mandate upon the denial of certiorari writ. The Tenth Circuit went on to conclude, however, that the AEDPA limitations period was tolled during the fifteen-day period in which the petitioner was allowed by state court rules to file a petition for rehearing with the Mexico Supreme Court to reconsider the denial of the certiorari petition. *Id.* at 1185.

Here, Colorado Appellate Rule 54(b) provides:

> No mandate shall issue upon the denial of a petition for writ of certiorari. Whenever application for a writ of certiorari to review a decision of any court is denied, the clerk shall enter an order to that effect, and shall forthwith notify the court below and counsel of record. If, after granting the writ, the court later denies the same as having been improvidently granted or renders decision by opinion of the court on the merits of the writ, petition for rehearing may be filed in accordance with the provisions of C.A.R. 40.

Unlike New Mexico, Colorado precludes the filing of a motion for rehearing with the Colorado Supreme Court to reconsider the denial of a petition for certiorari review. Instead, the Colorado Supreme Court's decision to deny a certiorari writ is final on the date the Clerk enters an order to that effect and the petitioner has no further appellate remedies available. Accordingly, it appears that under *Serrano*, the date the CCA enters its mandate after the Colorado Supreme Court denies certiorari review is irrelevant for purposes of AEDPA statutory tolling provision. However, even if the statute were tolled until the CCA issued its mandate on August 5, 2005, the Application is untimely, as discussed in the text above.

support, the existence of extraordinary circumstances which would warrant equitable tolling of the AEDPA limitations period.

Accordingly, the Application should be dismissed as time-barred.  Notwithstanding, I address the remainder of Respondents' arguments, in the alternative, below.

II.

Respondents next argue that Applicant failed to exhaust his state court remedies for claims two and three because he did not assert the claims as federal constitutional claims in the state courts, and for claims four and five because they were not presented to the state courts.[9]   Respondents also contend that claims four and five are not cognizable on federal habeas corpus review.

A.     Claims not Cognizable in a Federal Habeas Corpus Proceeding

Applicant asserts in claims three and four that the state courts denied him an evidentiary hearing in conjunction with his state post conviction motions and that the CCA denied him a limited remand to present additional claims to the trial court.  Applicant does not have a constitutional right to an evidentiary hearing in state post conviction proceedings, nor is he entitled to perpetual judicial review of his post conviction claims. Accordingly, claims three and four do not state separate claims for relief that are cognizable on federal habeas corpus review.  *See Steele v. Young*, 11 F.3d 1518, 1424 (10th Cir. 1993) (holding that habeas petitioner's challenge to Oklahoma post conviction procedures as applied to him did not state a federal constitutional claim cognizable in a

---

[9]Applicant concedes that he did not exhaust claims four and five in the state courts.  (Traverse, at 14)

federal habeas proceeding); *Hopkinson v. Shillinger*, 866 F.2d 1185, 1218-20 (10th Cir.

1989)(holding that prisoner's challenge to Wyoming's post conviction review procedures

was not cognizable on federal habeas review), *reh'g granted on other grounds*, 888 F.2d

1286 (10th Cir.1989).  Claims three and four should be dismissed.

Similarly, claim five – that the CCA's denial of Applicant's *Apprendi* claim on a

ground not argued by the State prejudiced Applicant because he was *pro se* – does not

state a constitutional or federal statutory ground for relief and should be dismissed.

B.    Exhaustion of Claim Two

Respondents argue that Applicant did not present his ineffective assistance of

counsel claim to the CCA as a federal constitutional claim because Applicant "did not cite

or argue any federal foundation." (Answer to Order to Show Cause, at 11)  I disagree with

Respondents, in part.

A state prisoner must ordinarily exhaust available state court remedies prior to

seeking federal habeas corpus relief.  28 U.S.C. §2254(b)(1)(A); *Rose v. Lundy*, 455 U.S.

509 (1982).  The exhaustion requirement is satisfied if the federal claims have been

correctly presented to the highest state court, either on direct appeal or in a post

conviction attack.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999);  *Dever v. Kansas

State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  Exhaustion may be excused only

if "there is an absence of available State corrective process" or "circumstances exist that

render such process ineffective to protect the rights of the applicant." 28 U.S.C.

§2254(b)(1)(B)(I) and (ii).

9

A federal habeas petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). Thus, the substance of the federal habeas claim must have been raised before the state courts in a manner sufficient to notify the courts of an alleged violation of the federal Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard*, 404 U.S. at 275-76.

The state trial court perceived Applicant's claim that counsel coerced him into pleading guilty as a Sixth Amendment claim of ineffective assistance of counsel and analyzed it under the controlling principles of *Strickland v. Washington*, 466 U.S. 668 (1984), as cited in *People v. Valdez*, 789 P.2d 406, 408-09 (Colo. 1990). (*See* June 6, 2001 Jefferson County District Court Order, attached to August 5, 2005 Application) In addition, Applicant argued in his Opening Brief in *Fogle* I, *inter alia*, that he was "invok[ing] [his] federal constitutional . . . right[ ] to counsel," that he was denied effective assistance of counsel during his plea proceeding and that counsel coerced him into pleading guilty. (Respondents' Ex. A) The CCA found that the trial court properly analyzed Applicant's ineffective assistance of counsel claim under *Strickland* and correctly concluded that Applicant had failed to show a constitutional violation. (Respondents' Ex. C, *Fogle* I) The CCA affirmed the trial court's order finding that Applicant had not been coerced by counsel into pleading guilty. (*Id.*)

The CCA also concluded, in a separate opinion, that defense counsel was not ineffective in advising the trial court that Applicant was on probation for the Maryland convictions at the time Applicant committed the Colorado crimes because the presentence

10

report reflected that Applicant was on probation and counsel's decision to advise the court of the same was a tactical decision – the Maryland courts' suspension of Applicant's sentences in lieu of probation was arguably a mitigating factor for the Jefferson County District Court to consider in imposing sentences for the Colorado crimes. *People v. Fogle*, 116 P.3d 1227, 1230 (Colo. App. 2004), *cert den.* (2005) (*Fogle* II).

I recommend finding that Applicant exhausted his allegation in claim two that his plea counsel was constitutionally ineffective in coercing Applicant to plead guilty. Applicant also exhausted his allegation that counsel's failure to challenge the statement in Applicant's presentence report that Applicant was on probation for other convictions at the time the Colorado crimes were committed constituted ineffective assistance. Applicant presented both allegations to the CCA as part of a Sixth Amendment claim. I further recommend finding, however, that Applicant failed to exhaust his contention that counsel was ineffective in failing to conduct an adequate pretrial investigation because Applicant did not raise that issue in the state trial and appellate courts.

Respondents argue that Applicant has procedurally defaulted his unexhausted claims. A habeas applicant who has failed to exhaust state remedies has committed an anticipatory procedural default of his federal claims if the state courts would now find the claims to be procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In such circumstances, the applicant has satisfied the technical requirements of exhaustion because state remedies are no longer available to him; however, because the applicant's claims would be barred in the state courts on procedural grounds, a federal habeas court may not address the merits of the federal claims unless the applicant can demonstrate

11

cause for the procedural default and actual prejudice as a result of the constitutional violation; or, that a fundamental miscarriage of justice will occur if the federal habeas court does not consider his claims. *Id.* at 750.

If Applicant now attempted to assert his unexhausted claim in a state motion for post conviction relief, the motion would be denied as untimely under COLO.REV.STAT. ("C.R.S.") §16-5-402 (providing three-year limitations period for filing state post conviction motions, absent a showing of justifiable excuse or excusable neglect) . The motion would also be subject to denial under state procedural rules which bar successive post conviction motions, absent exceptional circumstances. *See People v. Rodriguez*, 914 P2d 230, 253-54 and n.20, 22 (Colo. 1996); *Turman v. Buckallew*, 784 P.2d 774, 780 (Colo. 1989); Colo.Crim.P. 35(c)(3). Accordingly, Applicant must demonstrate cause and prejudice for his procedural default, or that a fundamental miscarriage of justice will result if the court does not hear the merits of his claim on federal habeas review.  Because Applicant has not even attempted to meet his burden, that part of Applicant's ineffective assistance of counsel claim concerning the alleged failure to conduct an adequate pretrial investigation should be dismissed.

I address the merits of claim one below, as well as the part of Applicant's second claim charging that counsel was constitutionally ineffective in coercing him to plead guilty and in advising the court during the providency hearing that Applicant was on probation for convictions in Maryland when he committed the crimes in Colorado.

III.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. 104-132 (effective April 24, 1996), federal habeas relief will not be granted on a constitutional claim adjudicated on the merits in the state courts unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §2254(d)(1) and (2). In *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), the Supreme Court held that a state court decision is "contrary to" Supreme Court precedent only when it "arrives at a conclusion opposite to that reached by this Court on a question of law," or if the state court "decides a case differently than this Court has on a set of materially indistinguishable facts." The state court decision need not cite Supreme Court cases, as long as neither the reasoning nor the result of the state court determination contradicts Supreme Court law. *Early v. Packer*, 537 U.S. 3, 8 (2002). A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 407-08. An application is not unreasonable merely because the habeas court determines it to be incorrect. *Id.* at 411. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*

The federal habeas court presumes that the state courts' determination of factual issues is correct. 28 U.S.C. §2254(e)(1); *Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999). The Applicant bears the burden to rebut the presumption with clear and convincing evidence. *Id.*

A.   *Apprendi* Claim

Applicant claims that his sentence in the aggravated range violates his due process rights as set forth in *Apprendi v. New Jersey* because the fact used to enhance his sentence – that he was on probation for Maryland convictions at the time the Colorado crimes were committed – was not submitted and proven to the jury beyond a reasonable doubt.

Under *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum [other than the fact of a prior conviction] must be submitted to a jury, and proven beyond a reasonable doubt." 530 U.S. at 490.

Applicant pleaded guilty to two counts of aggravated robbery. Aggravated robbery is a class 3 felony under C.R.S. §18-4-302(3). The Colorado Criminal Code generally imposes a presumptive sentencing range of four to twelve years imprisonment for a class 3 felony. C.R.S. §18-1.3-401(1)(a)(V)(A) (formerly C.R.S. §18-1-105(1)(a)(V)(A)). However, the Code designates several crimes as extraordinary risk crimes, including aggravated robbery, that are subject to the modified presumptive sentencing range specified in C.R.S. §18-1.3-401(10)(formerly §18-1-105(9.7)). The maximum sentence in the presumptive range is increased by four years for an extraordinary risk crime that is a class three felony. *Id.* Accordingly, Applicant was exposed to a possible maximum

presumptive sentence of sixteen years for each aggravated robbery conviction based solely on his commission of the crime. Applicant admitted to committing the aggravated robberies in the plea proceeding.

The state trial court went beyond the statutory presumptive range, however, and sentenced Applicant to thirty-two years for each aggravated robbery conviction pursuant to C.R.S. §18-1.3-401(8)(formerly §18-1-105(9)). That statute directs the sentencing court to sentence a defendant to at least the midpoint in the presumptive range, but not more than twice the maximum punishment authorized, if the court finds the presence of one of several enumerated extraordinary aggravating factors, including the fact that the defendant was on probation at the time the felony was committed. *See* C.R.S. §18-1.3-401(8)(III) (formerly §18-1-105(9)(III)). The trial court relied on the presentence report which stated that Applicant was on probation for four felony convictions in Maryland at the time he committed the Colorado crimes. (*See* presentence report in Jefferson County District Court Cases 99-CR-626 and 99-CR-1286, at 3-5) The Maryland court suspended Applicant's prison sentences and imposed a three-year term of supervised probation for each of the four convictions, with the condition that Applicant enter and successfully complete the Colorado Stout Street Foundation drug and alcohol rehabilitation program. (*Id.*)

Applicant argues that he was not on probation for crimes committed in Maryland at the time he committed the Colorado offenses; that he tried to challenge the statements in the presentence report at the sentencing hearing, but neither defense counsel, nor the trial court would allow him to speak; and, that he was not allowed to review the presentence report prior to the sentencing hearing. (August 25, 2005 Application, at 6A; Traverse, at

15

6; Respondents' Ex. A, at 6).   Applicant concedes, however, that he had criminal convictions in Maryland and that the Maryland court ordered him to participate in a rehabilitation program at the Colorado Stout Street Foundation.  (Respondents' Ex. A, at 7)

During the providency proceeding, defense counsel advised the trial court that Applicant was on probation at the time he committed the crimes in Colorado.  (Transcript of Providency Hearing, at 11)  At sentencing, defense counsel argued, as a mitigating factor, that the Maryland courts had suspended Applicant's prison sentences and placed him on probation so that he could complete the Stout Street Foundation drug rehabilitation program because the Maryland courts recognized that Applicant had a severe problem for which he needed help.  (Transcript of Sentencing Hearing, at 10)

The CCA addressed Applicant's *Apprendi* claim twice.  In  *Fogle* I, the CCA held that Applicant's sentence did not violate the rule of *Apprendi* based on *People v. Allen*, 43 P.3d 689 (Colo.App. 2001), *republished at* 78 P.3d 751 *to include modifications on denial of rehearing*.   In  *Allen*, a panel of the CCA held that the trial court's imposition of a sentence in the aggravated range did not violate *Apprendi* because the defendant's conviction by a jury, without more, exposed the defendant to the maximum sentence authorized by the Colorado Criminal Code – up to twice the maximum sentence in the presumptive range if the trial court found the presence of extraordinary aggravating factors.  78 P.3d at 754-55.

In *Fogle* II, the CCA revisited Applicant's *Apprendi* claim because "the viability of *Allen* as support for a conclusion that *Apprendi* is inapplicable here has been called into question by *Blakely v. Washington*, 542 U.S. 296 (2004)." 116 P.2d at 1229.

In *Blakely*, the Supreme Court clarified that "the `statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."* 542 U.S. at 303. The Supreme Court further held that "[w]hen a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." 542 U.S. at 310 (citing *Apprendi*, 530 U.S. at 488).[10]

In *Fogle* II, the CCA concluded that Applicant's sentence in the aggravated range comported with *Apprendi* and *Blakely* because defense counsel's statements to the court during the providency and sentencing hearings that Applicant was on probation for convictions in Maryland at the time the Colorado crimes were committed constituted an admission of that fact by the Applicant. *Fogle* II, 116 P.3d at 1229-30. The CCA imputed defense counsel's admissions to the Applicant because Applicant did not dispute the accuracy of the statements at the time they were made, nor did Applicant deny that he was under the supervision of a drug and alcohol treatment program when he committed the offenses. *Id.* at 1230.

---

[10]Following *Blakely*, the Colorado Supreme Court over-ruled *People v. Allen* in *Lopez v. People*, 113 P.3d 713 (2005). In *Lopez*, the Colorado Supreme Court held that that "'the statutory maximum' for *Apprendi/Blakely* purposes is the `presumptive range' established for the specific crime with which the defendant was charged." 113 P.2d at 726.

I need not address the question of whether defense counsel's statements during Applicant's providency and sentencing hearings about Applicant's probationary status can be considered admissions by the Applicant under *Blakely* for purposes of sentencing Applicant beyond the maximum presumptive range prescribed by statute. The critical question under the AEDPA deferential standard of review is whether the CCA's decisions rejecting Applicant's *Apprendi* claim were contrary to, or an unreasonable application of, the Supreme Court law that existed at the time Applicant's convictions became final in December 2000. 28 U.S.C. §2254(d)(1). *Blakely*, which was decided in 2004, is inapposite. *See Allen v. Reed*, 427 U.S. 767, 774 (10th Cir. 2005)(holding that habeas petitioner could not rely on *Blakely* in support of claim that his aggravated sentence violated due process because petitioner's conviction became final in 2002). Moreover, the Tenth Circuit has held expressly that *Blakely* does not apply retroactively to convictions that were final at the time *Blakely* was decided. *United States v. Price*, 400 F.3d 844, 849 (10th Cir. 2005). Accordingly, in this habeas corpus proceeding, I consider only whether Applicant's sentence was contrary to, or involved a reasonably application of, *Apprendi*. The Tenth Circuit's holding in *Allen v. Reed* is dispositive of the issue.

In *Allen v. Reed*, the appellant argued that the CCA's decision in *People v. Allen* – that the trial court's imposition of a sentence in the aggravated range did not violate *Apprendi* because the defendant's conviction by a jury, without more, exposed the defendant to a maximum sentence in the aggravated range under Colorado's sentencing scheme – violated his constitutional rights under *Blakely*. 427 F.3d at 773-74. Mr. Allen was sentenced to the aggravated maximum allowed by Colorado statute. The Tenth

18

Circuit held that Mr. Allen could not rely on *Blakely* to prove his *Apprendi* claim because *Blakely* was decided after Mr. Allen's conviction became final. 427 F.3d at 774. The Tenth Circuit then concluded that the CCA's interpretation of *Apprendi* in *People v. Allen* was not contrary to, or an unreasonable application of, *Apprendi* because "[p]rior to the issuance of *Blakely*, the federal circuits unanimously believed that the `statutory maximum' was the greatest sentence permitted by the *statute of conviction*, irrespective of what fact-finding the court conducted to impose that sentence." 427 F.3d at 775 (citing *Price*, 400 F.3d at 847 (citing cases)).

Like Mr. Allen, Mr. Fogle was sentenced to the aggravated maximum allowed by Colorado statute. The CCA relied on *People v. Allen* to deny Applicant's *Apprendi* claim in *Fogle* I. Under the holding of *Allen v. Reed*, the CCA's conclusion in *Fogle* I that Applicant's concurrent thirty-two year sentences in the aggravated sentencing range comported with due process was not contrary to, or an unreasonable application of, *Apprendi*.

Applicant argues that his presentence report contains material misstatements because he was not on probation at the time he committed the Colorado offenses; however, Applicant has never offered any evidence in the state or federal court proceedings to refute the information contained in the presentence report. Indeed, after defense counsel told the court that the presentence report was accurate during the sentencing hearing, the state district court judge asked Applicant if there was anything he wanted to say before the court sentenced him and Applicant responded in the negative. (Transcript of Sentencing Hearing, at 2, 12) Applicant knew at the providency hearing that

19

his probationary status would be an issue at sentencing.   (Transcript of Providency Hearing, at 11)  Moreover, Applicant's assertions that both the trial judge and his counsel prevented Applicant from speaking to the court during the providency and sentencing hearings are belied by the transcripts of those proceedings.

Applicant's claim that the trial court's imposition of aggravated sentences violated his due process rights as set forth in *Apprendi* should be dismissed.

B.      Ineffective Assistance of Counsel

Applicant claims that defense counsel was constitutionally ineffective in coercing him to plead guilty and in advising the trial court that Applicant was on probation for Maryland convictions at the time he committed the crimes in Colorado.

The Sixth Amendment entitles a criminal defendant to effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was constitutionally ineffective, Applicant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced his defense.  *Id.* at 687-88.

"Judicial scrutiny of counsel's performance must be highly deferential."  *Strickland,* 466 U.S. at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  A federal habeas petitioner can overcome this presumption by showing that the challenged acts or omissions "were outside the wide range of professionally competent assistance" and were not sound strategy under the circumstances.  *Id.* at 689-90.

To establish the prejudice prong of an ineffective assistance of counsel claim in the context of a guilty plea, Applicant must show a reasonable probability that but for counsel's errors, Applicant would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

    1.   <u>Coerced guilty plea</u>

Applicant asserts that counsel coerced him to plead guilty by lying to Applicant about the possible sentences he faced and about his parole eligibility date.  (Amended Application, at 6A)

A guilty plea must be knowing and voluntary to comport with due process.  *Boykin v. Alabama*, 395 U.S. 238, 242-244 (1969). The defendant must understand the nature of the charges against him and be aware of the consequences of his guilty plea.  *Id.*

"[C]oercion by the accused's counsel can render a plea involuntary.  *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir. 1988); *see*, *also*, *United States v. Carr*, 80 F.3d 413, 416 (10th Cir. 1996)(stating that "[a] guilty plea entered upon the advice of counsel is invalid if the plea was coerced").  Coercion exists when counsel materially misinforms the defendant of the consequences of the plea, or advises the defendant that he has no choice but to plead guilty.  *Fields v. Gibson*, 277 F.3d 1203, 1213 (10th Cir. 2002)(internal citations omitted).  However, "advice – even strong urging by counsel does not invalidate a guilty plea."  *Fields*, 277 F.3d at 1214 (quoting *Williams v. Chrans*, 945 F.2d 926, 933 (7th Cir. 1991))(internal quotation omitted); *see, also, Miles v. Dorsey*, 61 F.3d  1459, 1470 (10th Cir. 1995)(concluding that trial counsel's "vigorous[ ] urg[ing]" that his client plead guilty because the attorney believed it was in his client's best interest did not constitute

21

coercion); *United States v. Carr*, 80 F.3d at 417 (finding  that defendant's guilty plea was voluntary even if counsel hounded him to accept the plea and called defendant "stupid" and a "f------ idiot" when he initially refused the plea bargain because defendant ultimately made the choice to plead guilty).

"When an involuntariness claim rests on the faulty legal decisions or predictions of defense counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective." *Bush v. Neet*, 400 F.3d 849, 853 (10th Cir. 2005)(internal citations and quotations omitted).

The providency hearing was held on August 24, 2000.  That same day, Applicant signed a Petition to Enter a Guilty Plea (plea agreement) in each criminal case affirming that he understood the elements of the offense to which he was pleading guilty and that he was facing a possible maximum sentence of thirty-two years for each conviction if the court found the existence of extraordinary aggravating circumstances (such as Applicant being on probation for a felony at the time the crimes were committed). (R. Vol. I, at 137-43; R. Vol. III, at 117-123)  In addition, Applicant confirmed that his pleas were not coerced by defense counsel and indicated his understanding that the court would not be bound by any representations or promises that were made to him by anyone concerning the penalty to be imposed.  (*Id.*)  Defense counsel also signed the plea agreements, substantiating that he had explained the criminal charges and possible penalties to Applicant and that counsel had advised Applicant to plead guilty.  (*Id.*)

The trial judge advised Applicant twice at the providency hearing that Applicant was facing a thirty-two year sentence for each conviction if the court found extraordinary

aggravating circumstances. (Transcript of Providency Hearing, at 9, 11-12) Applicant told the trial judge that he understood the possible sentences that the court could impose. (*Id.* at 10, 12) Applicant also told the trial court that no one had placed any "undue influence" on him to get him to plead guilty. (*Id.* at 17) The trial court found that Applicant had knowingly, voluntarily and intelligently pleaded guilty to the two aggravated robbery charges with a full understanding of the nature of the charges and their possible consequences. (*Id.* at 21-22)

The transcript of the providency proceeding and the plea agreements signed by Applicant establish that Applicant knew that he was facing up to a thirty-two year sentence for each crime and that Applicant chose to plead guilty with this knowledge. Applicant has failed to overcome the presumption of verity accorded to his representations at the providency hearing:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the providency] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory assertions unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Accordingly, even if counsel did misrepresent to Applicant the possible sentences Applicant faced if he pleaded guilty in private conversations before the providency hearing, Applicant cannot show that he was prejudiced by the alleged misstatements of counsel.

Applicant also makes a conclusory assertion that counsel gave him erroneous information about his parole eligibility date, but does not provide any specific facts to support his contention.   Because Applicant is *pro se*, however, I consider the allegations he made in state post conviction proceedings in support of his claim. Applicant alleged, in a petition for rehearing of the CCA's decision in *Fogle* II, that counsel told Applicant prior to entry of his guilty pleas that aggravated robbery was not a crime of violence and that the CDOC's practice was to parole a non-violent offender who had served half of his sentence.  (Respondents' Ex. I, at 3-4) Applicant further alleged that when he arrived at his CDOC facility, he learned that the CDOC does treat aggravated robbery as a violent offense.  (*Id.* at 3)  Applicant asserted that if he had known he would have to serve more than half of his sentence before being eligible for parole, he would not have pleaded guilty.  (*Id.*)

Although Applicant raised his allegations in a petition for rehearing filed in the CCA, he did not present the claim to the state district court, nor did he present it to the CCA in his Opening Brief in *Fogle* II.  The CCA denied the petition for rehearing and did not consider the claim.  Because the CCA did not address the merits, I review

Applicant's claim *de novo*.[11]   *See Harris v. Poppell*, 411 F.3d 1189, 1195 (10th Cir. 2005).

As an initial matter, the plea agreements Applicant signed do not promise Applicant that he would serve less than his full sentences, nor does the transcript from the providency hearing show that the trial court made any promises to Applicant about parole eligibility.  The plea agreements state that Applicant shall serve a mandatory period of parole of five years to begin immediately after his discharge from imprisonment in the CDOC.  (R. Vol. I at 140; R. Vol. III, at 120)   The plea agreements further provide that the District Attorney did not make any promises regarding Applicant's prison sentences.  (*Id.*)

Even if Applicant could prove that counsel misrepresented Applicant's parole eligibility date by several years and that parole eligibility was an important factor in Applicant's decision to plead guilty,  so as to satisfy the objective prong of the ineffective assistance of counsel inquiry,[12] Applicant must still show that he was prejudiced by counsel's errors.  The record establishes that Applicant was convicted by a Denver District Court jury in May and August 2000 of aggravated robbery and four habitual

---

[11]Notwithstanding Applicant's failure to exhaust his ineffective assistance of counsel claim based on counsel's misrepresentations about parole eligibility, I can address the claim on the merits because, as discussed in the text above, I ultimately recommend that all of Applicant's claims which are cognizable on federal habeas review be dismissed on their merits *See* 28 U.S.C. §2254(b)(2)("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Moore v. Schoeman*, 288 F.3d 1231, 1233 (10th Cir. 2002)(holding that a habeas petition may be dismissed on its merits even if some or all of the applicant's claims are unexhausted).

[12]*See Beavers v. Saffle*, 216 F.3d 918, 925 (10th Cir. 2000)(recognizing that ineffective assistance of counsel claim can be premised on "gross misadvice" about habeas petitioner's parole eligibility)

criminal counts.  (Presentence Report, at 7) Applicant was sentenced to a term of sixty-six years with the CDOC for the Denver convictions, plus five years of mandatory parole.  (*Id.;* Transcript of Sentencing Hearing, at 8-9) At Applicant's sentencing hearing in the Jefferson County cases, defense counsel told the trial court  that Applicant's parole eligibility date, based on the sixty-six year sentence in Denver District Court, was 2031.  (Transcript of Sentencing Hearing, at 9)   Accordingly, Applicant knew at the time of sentencing that he would not be eligible for parole on his Denver convictions for thirty-one years, regardless of what his parole eligibility might be for the Jefferson County convictions.  Moreover, Applicant was facing trial and possible convictions and sentencing on five counts of aggravated robbery and five habitual criminal counts in Jefferson County District Court if he did not plead guilty to two of the aggravated robbery counts.  I recommend finding that Applicant's assertions that he would not have pleaded guilty and would have insisted on going to trial if counsel had not allegedly told him that he would be eligible for parole after serving half of his sentences on the Jefferson County convictions are wholly incredible in the face of the state court record.

Applicant's claim that counsel coerced him to plead guilty should be dismissed.

2.     Counsel's statements to the court about Applicant's probationary status

Applicant finally claims that his trial counsel was constitutionally ineffective when counsel advised the trial court before Applicant's sentencing that Applicant was on probation when he committed the crimes in Colorado.

Defense counsel told the court at the providency hearing that Applicant was on probation for other offenses when he committed the Colorado crimes.  (Transcript of

26

Providency Hearing, at 11)   At sentencing, counsel argued that Applicant's prison sentences for felony convictions in Maryland had been suspended on the condition that Applicant complete three years of probation, including the Stout Street Foundation rehabilitation program, because the Maryland court recognized that Applicant had a severe drug problem which caused him to commit the crimes in Maryland and that Applicant needed treatment, not prison.  (Transcript of Sentencing Hearing, at 3-4, 10)

The CCA held, in *Fogle* II, that counsel's conduct in informing the court during the providency hearing that Applicant was on probation at the time the crimes were committed was objectively reasonable because the presentence report established that Applicant was on probation, and counsel's decision to advise the court of the same was a reasonable strategic decision to argue Applicant's probationary status as a mitigating factor at Applicant's sentencing.  116 P.3d at 1230.

I recommend finding that the CCA's decision was not contrary to, or an unreasonable application of, *Strickland*.  Applicant's ineffective assistance of counsel claim should be dismissed because Applicant has failed to show that counsel's decision to argue Applicant's probationary status as a mitigating factor to the sentencing court was not sound strategy under the circumstances.  *See Strickland*, at 689-90.

IV.

For the reasons set forth above, it is

**RECOMMENDED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. §2254, filed by Applicant Ronald Jennings Fogle on August 5, 2005, and as

27

amended on August 25, 2005, be **DENIED** as untimely, or alternatively, on the merits, and

that the Application be **DISMISSED WITH PREJUDICE**.

**Within ten days after being served with a copy of the proposed findings and recommendation, any party may serve and file written objections to the proposed findings and recommendation with the Clerk of the United States District Court for the District of Colorado.  The district judge shall make a de novo determination of those portions of the proposed findings or specified recommendation to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the proposed findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

**Failure to make timely objections to the magistrate judge's recommendation may result in a waiver of de novo review of the recommendation by the district judge and may also waive the right to appeal from a judgment of the district court based on the findings and recommendations of the magistrate judge.**

Dated May 11, 2006.

BY THE COURT:

s/ Patricia A. Coan
PATRICIA A. COAN
United States Magistrate Judge